

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF BOULDER<br>STATE OF COLORADO<br>1777 6TH STREET<br>BOULDER, CO 80302 | DATE FILED: September 6, 2023 11:20 AM<br>FILING ID: 6B38E10214DF6<br>CASE NUMBER: 2023CV30630 |
| **Plaintiff:**<br>Bernadette Morrissey and Timothy Morrissey<br><br>v.<br><br>**Defendant:**<br>Garrison Property and Casualty Insurance Company, a Texas corporation, and a subsidiary of USAA Casualty Insurance. | ▲COURT USE ONLY▲ |
| Attorneys for Plaintiffs:<br>Eric R. Jonsen, #15076<br>ALLEN VELLONE WOLF HELFRICH & FACTOR P.C.<br>1600 Stout St., Suite 1900<br>Denver, Colorado 80202<br>Phone Number: (303) 534-4499/ (303) 991-5970<br>Email: erjonsen@jonsen.net | Case Number:<br><br>Division/Courtroom: |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiffs, Bernadette Morrissey and Timothy Morrissey ("Plaintiffs" or the "Morrisseys") by and through their attorneys, and for their Complaint against Garrison Property and Casualty Insurance Company, a Texas corporation, and a subsidiary of USAA Casualty Insurance USAA Insurance ("USAA" or "Defendant"), state as follows:

### PARTIES

1. Plaintiffs Timothy and Bernadette Morrissey own and reside at 825 Vivian Street Longmont, Boulder, Colorado.

2. Defendant Garrison Property and Casualty Insurance Company ("Garrison"), is a Texas corporation, a subsidiary of USAA Casualty Insurance, with a business address of 9800 Fredericksburg Road, San Antonio, Texas 78288.

Exhibit A

## SUMMARY OF CLAIMS

Bernadette and Timothy Morrissey were policyholders of Garrison Property and Casualty Insurance Company, and suffered sudden and accidental water damage at their insured residence at 825 Vivian St. Longmont, Boulder, CO on October 22, 2022 ("Insured Premises"). Plaintiffs promptly reported the damage, and Garrison, because of the emergency nature of the water damage, advised the Morrisseys to engage the services of Pure Restore, a water damage remediation company. Pure Restore remediated the water damage and restored the Morrisseys' home; however, Garrison only paid a fraction of the restoration bill for the work Pure Restore did, $7,087.23 out of $39,823.66, leaving a staggering balance, and deliberately exposing their insureds to a lien and lawsuit by Pure Restore to collect the unpaid balance. Despite later directing the Morrisseys not to contact Pure Restore about the unpaid balance Pure Restore was seeking, and despite numerous assurances that it would reconcile the outstanding balance with Pure Restore and avert any further complications, Garrison abandoned the Morrisseys. Because of the abandonment, and because Garrison delayed and failed to make full payment for the insured loss, Pure Restore filed a mechanics lien against the Morrissey's residence, and then filed a lawsuit to foreclose its mechanics lien against the Morrissey's home for the unpaid invoice. The Morrissey's were left with little recourse but to find money to settle the mounting debt on their own. In a final, good-faith attempt to alleviate the matter and secure their home, the Morrisseys negotiated a reduced payment of $18,500 to resolve the lien and litigation.

## JURISDICTION AND VENUE

3. The Defendant is and at all relevant times mentioned herein was, engaged in the business of providing insurance coverage to residents of the State of Colorado, and in doing so, purposefully availed itself of the benefits, rights, and protections of the State of Colorado.

4. The Defendant transacts business within the State of Colorado by providing insurance policies, collecting premiums, and adjusting claims for residents of Colorado.

5. The Defendant has established both systematic and continuous contacts with the State of Colorado by actively soliciting and entering into contracts with Colorado residents, including the Plaintiffs.

6. The Defendant, directly or through agents, has the following minimum contacts with the State of Colorado, which are sufficient to confer jurisdiction upon this Court:

**Exhibit A**

a. The Defendant has executed contracts of insurance in the State of Colorado, specifically the insurance policy issued to the Plaintiffs.

b. The Defendant has purposefully derived economic benefits from Colorado residents by accepting premium payments from residents including the Plaintiffs.

c. The Defendant has caused injury to Colorado residents, including the Plaintiffs, by its actions and omissions within the State of Colorado.

7. The Plaintiffs' claims arise directly out of and relate to the Defendant's activities and contacts within the State of Colorado.

8. Jurisdiction is proper under the Colorado Long Arm Statute, C.R.S. § 13-1-124(1)(a, c and d).

## BACKGROUND FACTS

9. Garrison issued a Preferred Protection Plan – Homeowners Policy, number GAR 00920 03 92 90A, for the period April 15, 2022 to April 15, 2023, the Morrisseys' Policy ("Policy"). A true and correct copy of the Policy is attached as **Exhibit A** to this Complaint.

10. The residence insured under the Policy is 825 Vivian St. Longmont, Boulder, Colorado.

11. On October 22, 2022, the Plaintiffs suffered an insured loss caused by a broken drain valve on their water heater at the Insured Premises.

12. The Plaintiffs notified Garrison that same day, and were advised by Garrison that they could proceed with any restoration provider they chose, and Garrison specifically approved Pure Restore while on a telephone conversation with Ms. Bernadette Morrissey.

13. On or around October 22, 2022, Plaintiffs entered into an Emergency Work Authorization Agreement ("Agreement") with Pure Restore for restoration work at the Insured Premises resulting from water damage.

14. Garrison thereafter acknowledged coverage for the Plaintiffs' claim.

15. Pure Restore performed its duties pursuant to the Agreement, and, on or around December 7, 2022, billed the Morrisseys $39,823.66 for the work done.

16. The Morrisseys promptly forwarded the Pure Restore invoice to Garrison, who initially approved a partial payment in the amount of $7,157.94, but inexplicably issued payment in the lesser amount of $7,087.27.

17. Thereafter, Garrison failed to pay for anything over $7,087.27 of Pure Restore's invoice which totaled $39,823.66.

18. Upon information and belief, Garrison believed it could negotiate a reduction in the Pure Restore invoice, and Garrison then advised the Plaintiffs not to contact Pure Restore and that Garrison would handle the matter and reach a resolution.

19. Garrison, despite undertaking to do so, failed to resolve the matter with Pure Restore and failed to advise the Plaintiffs of the status of the matter, until the Plaintiffs requested an update regarding whether the matter was resolved.

20. On January 11, 2023, a Garrison representative admitted to Ms. Bernadette Morrissey during a telephone call, that Garrison should have had an adjuster following up with Pure Restore and that Garrison should have dealt with the remediation company, and that Garrison had failed to do so. The representative also admitted that Garrison did not have the proper adjuster on the matter.

21. On February 1, 2023, Garrison again directed the Plaintiffs not to call Pure Restore regarding the remaining balance, until an adjuster discussed the matter with the remediation company.

22. On February 20, 2023, Plaintiffs inquired of Garrison about the status of the Pure Restore invoice after payment of the $7,087.27 asking, "How do we know if they are considering the account paid in full or if we will get a surprise bill later for the remainder?"

23. On February 21, 2023, the Plaintiffs were advised by Pure Restore that it would be filing a lien against the Morrisseys' home as it was unable to reach an agreement with Garrison. On this same day, the Morrisseys advised Garrison of the threat to lien their home, and Garrison advised the Plaintiffs not to speak to the remediation company because Garrison indicated it was still working to negotiate and pay the claim.

24. On March 8, 2023, unbeknownst to the Morrisseys, Pure Restore recorded its Lien Statement with the Boulder County Clerk and Recorder at Reception No. 03999535.

25. On March 13, 2023, Pure Restore emailed Plaintiffs saying Pure Restore had filed a lien.

Exhibit A

26. On March 31, 2023, unbeknownst to the Morrisseys, Pure Restore sued the Plaintiffs, as well as their mortgage lender, in Boulder County District Court, claiming breach of contract, and seeking to foreclose on their home.

27. On April 6, 2023, the Plaintiffs discovered that Pure Restore had filed a lien on their home in the amount of $32,736.39. The Plaintiffs left a message with Garrison asking to speak with a manager, and requesting a call to discuss the lien. Garrison did not respond.

28. On April 10, 2023, the Plaintiffs sent the lien documents to Garrison, and requested a meeting. The Garrison representative (Mark) represented he would invoke the appraisal provision with the remediation company, and that Garrison would handle the matter between Pure Restore and the Morrisseys, thus resolving the lien and the lawsuit.

29. On April 13, 2023 the Morrisseys were served with a lawsuit filed by Pure Restore seeking $32,736.39 and seeking to take their home to pay for the amount due. On the same day, the Morrisseys tendered the litigation to Garrison seeking defense and indemnity under the Policy, and asking if the appraisal process was moot as they had been served. Garrison responded that an appraiser had not yet been assigned.

30. On April 17, 2023, the Morrisseys requested a status of the resolution they were promised providing, "I was assured that the 'appraisal process' was being enacted. It was explained to me that USAA would hire an appraiser, and Pure Restore would also hire an appraiser, the appraisers would meet and come to an agreement, and at that point the outstanding amount due to Pure Restore would be resolved."

31. In response, on April 17, 2023, Garrison's representative responded, "Once I have the actual appraiser's name I will send out the letter to you and Pure Restore notifying of the assigned appraiser."

32. Despite representations from Garrison that it would handle the matter with the remediation company, pay for the remediation work, that the Morrisseys should not contact Pure Restore or be in the middle of the dispute, and that the appraisal would be between Garrison and the remediation company, on April 18, 2023, the Morrisseys received a letter from Garrison requesting that the *Morrisseys* appoint an appraiser as there was a disagreement between Plaintiffs and Garrison on the cost to repair for covered damage regarding "water mitigation."

**Exhibit A**

33. On that same day, Ms. Bernadette Morrissey contacted Garrison leaving a voicemail advising that she was confused about the appraisal letter, because it was contrary to what the Morrisseys had been repeatedly told.

34. On April 20, 2023, a Garrison representative responded in writing, "USAA is trying to assist by invoking the appraisal clause with Pure Restore. Letters are sent out to advise of this. USAA has not heard back from Pure Restore in response to the appraisal.... Hopefully Pure Restore will respond and we can come to an agreed upon amount and settle this claim...."

35. With an imminent response date on the pending litigation approaching, Garrison continued to fail to respond to the Morrisseys' questions and requests for assistance regarding payment of the remaining balance, the lien, or the litigation.

36. On April 26, 2023, the Morrisseys advised Garrison that due to the fact that a lien had been filed, litigation was pending and that Garrison failed to return calls or answer questions or provide them with direction, the Plaintiffs communicated with Pure Restore and obtained an opportunity to resolve the invoice, lien and litigation for $18,500 if paid by April 28, 2023.

37. The Morrisseys requested that Garrison agree to pay this amount, and advised that if it did not do so, the Morrisseys would pay these funds to resolve the matter, reserving all rights against Garrison.

38. Garrison, having abandoned the Morrisseys, never responded to the Morrisseys, and the Morrisseys paid these funds to Pure Restore in order to clear title to their home and to resolve the remaining balance on the invoice, the lien and litigation.

## FIRST CLAIM FOR RELIEF
(Breach of Insurance Contract-Abandonment)

39. The Morrisseys incorporate by reference the allegations in the preceding paragraphs.

40. The Policy is a contract of insurance, and the Morrisseys are named insureds.

41. Garrison was obligated to investigate and promptly pay the Morrisseys' claim under the Policy.

42. All conditions precedent to the Morrisseys' entitlement to payment have been met or waived.

Exhibit A

43. Garrison breached its obligations to the Morrisseys by, among other things, wrongfully refusing to pay Pure Restore's invoice, and by abandoning the Morrisseys as its insured.

44. As a result of Garrison's breach of contract, the Morrisseys suffered injuries, damages and losses in amounts to be proved at trial, including, without limitation, worry over the lien on their home, worry over how to pay for the Pure Restore invoices, worry over being involved in a lawsuit, and worry about the potential loss of their home through foreclosure.

## SECOND CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

45. The Morrisseys incorporate by reference the allegations in the preceding paragraphs.

46. In addition to the express duties imposed on Garrison by the Policy, Garrison owed duties to the Morrisseys under the Policy's implied covenant of good faith and fair dealing.

47. Garrison was required to deal with the Morrisseys fairly and honestly, to faithfully perform its contractual duties, to give the Morrisseys' interests the same consideration as it gave its own interests, and to do nothing to impair, interfere with, hinder, or potentially injure the Morrisseys' right to receive benefits under the Policy.

48. Garrison breached its duties of good faith and fair dealing by its actions as outlined above.

49. As a result of Garrison's breach of contract, the Morrisseys suffered injuries, damages and losses in amounts to be proved at trial, including, without limitation, worry over the lien on their home, worry over how to pay for the Pure Restore invoices, worry over being involved in a lawsuit, and worry about the potential loss of their home through foreclosure.

## THIRD CLAIM FOR RELIEF
### (Violation of C.R.S. § 10-3-1115 and Remedies Under C.R.S. § 10-3-1116)

50. The Morrisseys incorporate by reference the allegations in the preceding paragraphs.

**Exhibit A**

51. C.R.S. § 10-3-1115 forbids those engaged in the business of insurance from unreasonably delaying or denying payment of a claim for benefits owed to, or on behalf of, a first-party claimant.

52. The Morrisseys are a first-party claimant for purpose of C.R.S. § 10-3-1115.

53. Garrison denied full coverage to the Morrisseys under the Policy for their damages and losses without a reasonable basis, in violation of C.R.S. § 10-3-1115, and by denying full coverage, denied, refused or failed to pay the full Pure Restore invoice for work done on the Insured Premises.

54. C.R.S. § 10-3-1116 provides that a first-party claimant whose claim has been unreasonably delayed or denied may bring an action to recover reasonable attorney's fees and court costs, plus two times the covered benefit.

55. The Morrisseys now bring this claim to recover reasonable attorney fees and court costs, plus two times the covered benefit, pursuant to C.R.S. § 10-3-1116.

WHEREFORE, the Morrisseys request that judgment enter in their favor and against Garrison as follows:

A. For compensatory damages, including noneconomic damages, in amounts to be proved at trial;

B. For two times the covered benefit, pursuant to C.R.S. § 10-3-1116(1);

C. For all interest, pre-judgment, statutory or moratory, allowed by law;

D. For attorney's fees, expert fees and costs of suit herein; and

E. For such other relief as may be just and proper in the circumstance.

**PLAINTIFFS DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE**

DATED this 6th day of September 2023.

Exhibit A

Respectfully Submitted,

ALLEN VELLONE WOLF HELFRICH & FACTOR P.C.

By: s/ Eric R. Jonsen
Eric R. Jonsen
1600 Stout Street, Suite 1900
Denver, Colorado 80202
(303) 991-5970
erjonsen@jonsen.net

ATTORNEYS FOR THE PLAINTIFF

Address of Plaintiff:
c/o Allen Vellone Wolf Helfrich & Factor PC
1600 Stout Street, #1900
Denver, CO 80202

**Exhibit A**